United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE SIGN, PICTORIAL AND DISPLAY INDUSTRY WELFARE AND PENSION TRUST FUNDS, et al.

  Plaintiffs,

  v.

EVENT PRODUCTIONS INC,

  Defendant.
                                                    /

No. C 09-01914 SI

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE A SURREPLY**

Plaintiffs' motion for summary judgment is presently set for hearing on October 25, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court GRANTS plaintiffs' motion.[1]

**BACKGROUND**

Because plaintiffs have filed a motion for summary judgment, the Court recites the facts of this case in the light most favorable to the defendant.

Sign, Display and Allied Crafts Local Union No. 510 ("the Union") and defendant Event Productions, Inc. are parties to two collective bargaining agreements ("CBAs") that were in effect from

---

[1] Defendant's motion for leave to file a surreply is also pending before the Court, which GRANTS that motion as well.

April 1, 2004 until March 31, 2010. Hardeman Decl. Exs. 1–2.[2] Each CBA states that defendant "shall pay into the Sign, Pictorial and Display Pension Program for each hour paid or owed for employees (excluding 'C' list installers) covered by this Agreement" a specified amount of money. *Id.* Ex. 1, Art. XVII, § A ($4.15); *id.* Ex. 2, Art. XVII, § A ($4.65). Similarly, the defendant was required to "put into the Sign, Pictorial and Display Industry Medical Program for each hour paid or owed by[3] installers covered by this Agreement" $7.95 during the relevant period of time. *Id.* Ex. 1, Art. XVI, § A.1; *id.* Ex. 2, Art. XVI, § A.1. An audit report also indicates that the employer was required to pay an "industry stabilization" fee. Hardeman Decl. Ex. 3 ($.38 and $.48 per hour).

Certain of defendant's employees performed work covered by the CBAs ("union work" or "covered work") part of the time, for example installing and removing exhibits or making signs, and performed non-union or non-covered work at other times, for example sweeping floors. For at least ten years, defendant paid fringe benefits into the various Trust Funds for hours that these split-time employees spent doing union work, but not for hours those same employees spent performing non-union work. D. Egan Decl. at ¶ 10. During that time, defendant "passed" every audit. *Id.* at ¶ 6. In either 2006 or 2007, Bob Owen, a business representative for the Union, told the president of Events Production that this method of paying fringe benefits was acceptable. D. Egan Decl. ¶ 3.[4]

On January 20, 2009, the same accounting firm that had conducted the previous two audits of

---

[2] In its initial opposition to plaintiffs' motion for summary judgment, defendant raised several evidentiary objections to plaintiffs' reliance on an affidavit to prove the contents of the CBAs and Trust Agreements. Plaintiffs submitted copies of the two CBAs and the two Trust Agreements with their reply brief. Hardeman Decl. Exs. 1–2; Second Hallmon Decl. Exs. 1–2. Because plaintiffs provided the Court with this new evidence along, Defendant moved for leave to file a surreply. The Court GRANTS defendant's motion. Because plaintiffs cured any evidentiary problems noted by defendant when plaintiffs submitted the CBAs and Trust Agreements, and because defendant has not raised any new evidentiary objections in its surreply, the Court may consider the contents of the CBAs and Trust Agreements in this order.

[3] Neither party has discussed the use of the word "by" in this section of the CBAs. Because installers are employees, and because both parties agree that fringe benefits are calculated based hours paid or owed *for* employees' work, even if they disagree about which hours require such payment, the Court understands this phrase to mean each hour paid or owed *for* installers covered by the CBA.

[4] Plaintiffs object to defendant's evidence of this statement. As discussed later, whether or not Mr. Owen made this statement is not material. Therefore, the Court need not rule on this objection.

defendant completed another payroll compliance test on behalf of the Trust Funds, for the time period from January 1, 2006 through December 31, 2007. *Id.* ¶ 6; Dietterle Decl. ¶¶ 2–3. The auditor included hours that covered employees spent performing non-union work in his calculations of fringe benefit contributions owed to the Trust Funds. The auditor concluded that defendant owed $37,437.97 in fringe benefits based on unreported employees, underreported hours, and misreported hours. Dietterle Decl. ¶ 3 & Substituted Ex. 1.[5] Defendant has paid the Trust Funds approximately $3,000 for admitted clerical errors. Hallmon Decl. ¶ 5.

On May 1, 2010, plaintiffs filed a complaint alleging that defendant breached the provisions of the CBA and the Trust Agreements by failing to complete monthly reports properly and by failing to pay all moneys due on behalf of defendant's employees to the Trust Fund, in violation of ERISA and the Labor Management Relations Act ("LMRA"). Compl. ¶ 7. Plaintiffs request the money found owing in the audit report, liquidated damages, interest, costs, and attorney's fees. *Id.* ¶ 8.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[5] Defendant disputes this calculation, but only on the ground that it accounts for non-union work hours.

3

586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## II. The ERISA and LMRA claims

Section 15 of ERISA, 29 U.S.C. § 1145, provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall . . . make such contributions." A trustee is authorized to bring a civil enforcement action to enforce this provision of ERISA. 29 U.S.C. § 1132(a)(3); *see also* 29 U.S.C. § 185.

## DISCUSSION

## I. The terms of the CBAs

The central dispute is whether defendant was required to make contributions for hours covered employees spent doing work other than installing and removing show exhibits or making signs. Defendant argues that hours spent on other tasks are not "covered work" under the CBAs, and therefore defendant did not need to make trust fund contributions for employee hours devoted to that work. Plaintiffs respond that under the language of the agreement, defendant was required to make contributions to the Trust Funds for all hours worked by a "covered employee," regardless of whether

4

the hours fell into the categories of union work specifically enumerated in the agreement.[6]

At issue in this case is the proper interpretation of the CBAs. *See Operating Eng'rs' Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1339 (9th Cir. 1988); *Waggoner v. C & D Pipeline Co.*, 601 F.2d 456, 458 (9th Cir. 1979). The phrasing in the CBAs, that "each hour paid or owed for [employees] covered by this Agreement," unambiguously requires payment of fringe benefits for every hour worked by covered employees, regardless what type of work those employees were engaged in.

Even if the phrasing were more ambiguous, such that "covered" could somehow modify "hour" rather than "employees," thirty years of Ninth Circuit cases would require the Court to interpret the CBAs to require payment for all hours worked by covered employees. In *Waggoner v. C & D Pipeline Co.*, 601 F.2d 456 (9th Cir. 1979), the Ninth Circuit read similar but more ambiguous phrasing to require contributions for all hours worked by employees who perform any covered employment. *Id.* at 458. While this reading in *Waggoner* was based in part on an interpretation by a board to whom the parties had given the power to resolve certain disputes, the same or similar phrasing has been interpreted the same way in case after case. Where CBAs contain language similar to that in *Waggoner*, "'[i]t is well settled in the Ninth Circuit that where an employee splits his worktime between a position covered by a CBA and a position not covered, the employer must contribute for all the hours the employee works or is paid.'" *See Crosthwaite v. Culp's Soil Stabilization*, No. C 05-02270 MHP, 2006 WL 138415, at * 3 (N.D. Cal. 2006), (quoting *Operating Eng'rs' Tr. Funds v. Kinores*, 902 F. Supp. 1201, 1204 (D. Hawai'i 1995)) (citing *Operating Eng'rs' Pension Trs. v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1351 (9th Cir. 1990); *Operating Eng'rs' Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1341 (9th Cir. 1988); *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983); *Waggoner*, 649 F.2d 1362, 1369 (9th Cir. 1981) (alteration in *Crosthwaite*); *see also Waggoner v. Wm. Radkovich Co., Inc.,* 620 F.2d 206 (9th Cir. 1980) (per curiam); *Burke v. Lenihan*, 606 F.2d 840 (9th Cir. 1979).[7]

---

[6] The parties do not dispute what types of work are union or non-union.

[7] Since *Waggoner*, the Ninth Circuit has published opinions in two cases where the parties seemed to agree that fringe benefits were not due for non-covered work, and where the language in the collective bargaining agreements did not appear in the opinion. *See Motion Picture Indus. Pension v. N.T. Audio Visual*, 259 F.3d 1063, 1065 (9th Cir. 2001); *Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, (9th Cir. 1988). The Court does not consider those cases relevant to the

5

Although courts are not required to interpret different agreements in the same way, the Ninth Circuit has noted that the overriding federal policy of ERISA is "best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner." *Kemmis*, 706 F.2d at 997. In contrast to ordinary contracts, collective bargaining agreements do not exist in isolation and cannot be governed by the "old common-law concepts" which control the interpretation of contracts. Rather, "[t]o interpret [a collective bargaining] agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." *Transp.-Comm'n Emp't Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 160–61 (1966). Absent evidence that the parties to the CBAs in this case intended the contract to have a different meaning, these policy considerations win out. *Kemmis*, 706 F.2d at 997.

Defendant argues that its prior practices (and previous auditors' and Mr. Owen's apparent endorsements of those practices) are evidence that the contract should be interpreted differently, and therefore summary judgment is improper. The conduct of the parties to a collective bargaining agreement up to and including the time of negotiation of the agreement can be relevant to "interpreting the substantive provisions of the bargaining agreement" as long as that conduct does not "contradict express provisions of a collective bargaining agreement." *Syufy Enter. v. N. Cal. St. Assoc. of IATSE Locals*, 631 F.2d 124, 126 (9th Cir. 1980). Here, in addition to contesting clear terms of the CBAs, defendant has introduced evidence of the parties' practice subsequent to the negotiation and formation of the CBAs, which is not part of the "context of the history of the negotiations." *See id.* Therefore, even if defendants have been calculating fringe benefit payments the same way for years and auditors and individuals associated with the union have not previously taken issue with the method of calculation (or even if they have explicitly endorsed it), there is still no genuine issue of material fact as to the meaning of the CBAs. *See Corsthwaite*, 2006 WL 1348415, at *3 (rejecting prior practices argument); *Kinores*, 902 F. Supp. at 1206 (rejecting argument that union agent's post-formation statement was relevant to interpreting an agreement where the parties did not have a written agreement to modify the collective bargaining agreement).

---

contract interpretation question at issue in this case.

6

Defendant also argues that it has kept sufficiently accurate records of covered and non-covered hours worked that it has rebutted any presumption that the it owes fringe benefits for non-covered work hours. This rebuttable presumption test from *Brick Masons* does not apply where a contract, by its terms, requires contributions for all work performed by a split-time employee. Where the contract requires such contributions, "an employer cannot escape his duty to contribute to the trust funds for each and every hour worked or paid by showing that some of a split-time employee's hours were actually spent performing non-covered work." *Kinores*, 902 F. Supp. at 1206. Defendant's evidence that its records were accurately kept does not create a genuine issue of material fact.

Having determined that the CBAs require defendant to make fringe benefit contributions for all hours worked by split-time employees, the Court hereby GRANTS plaintiffs' motion for summary judgment on the question of liability.

## II. Damages

In a successful action to enforce 29 U.S.C. § 1145, a plan is entitled to:

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(c) an amount equal to the greater of--
 (I) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

19 U.S.C. § 1132(g).

Plaintiffs seek $34,437.97 in remaining unpaid contributions for the period January 1, 2006 to December 31, 2007. They seek liquidated damages in the amount of $7,487.59, or twenty percent of the unpaid contributions, which is provided for in the Trust Agreements. They seek an award of interest on the unpaid contributions and liquidated damages at a rate of 10 percent, which they calculate came to $12,546.86 as of July 23, 2010. They seek $2,687.79 in attorney's fees, as provided for in the Trust Agreements, and $500 in costs "reasonably required and actually incurred." *See* Civil Local Rule 54-3. And they seek $1,685.86 in audit fees, also provided for in the Trust Agreements. Therefore, all said, plaintiffs request $59,346.07 in damages, plus interest accruing after July 23, 2010.

7

As proof of damages and entitlement to special damages, plaintiffs have presented evidence of their costs and attorney's fees incurred, relevant portions of the CBAs, two trust agreements, and the audit report. *See* Hallmon Decl. Exs. 4–5; Second Hallmon Decl. Exs. 1–2 ; Hardeman Decl. Exs. 1–2; Dietterle Substituted Ex. 1. Defendant has not renewed any of its evidentiary objections in the face of the new evidence presented by plaintiffs. Defendant only questions the accuracy of the dollar figures requested by plaintiffs, or plaintiffs' entitlement to special damages, based on its claim that it is not required to pay fringe benefits for non-covered work. The Court already rejected this argument at the liability stage.

The Court hereby GRANTS plaintiffs' motion for summary judgment on the question of damages.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for leave to file a surreply [Doc. 43] and GRANTS plaintiffs' motion for summary judgment [Doc. 27].

**IT IS SO ORDERED.**

Dated: October 20, 2010

SUSAN ILLSTON
United States District Judge